

Signed December 28, 2010.

_____
Ronald B. King
United States Chief Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| JAMES EDWARD CARLE, | § | CASE NO. 09-50542-RBK |
| | § | |
| DEBTOR | § | CHAPTER 7 |
| | § | |
| BARBARA M. GREEN | § | |
| | § | |
| VS. | § | ADVERSARY NO. 09-5055-RBK |
| | § | |
| JAMES EDWARD CARLE | § | |

OPINION

Barbara Green ("Plaintiff") initiated this adversary proceeding against Debtor James Carle ("Defendant"). Plaintiff asserts that Defendant should be denied a discharge for making a false oath under section 727(a)(4); failure to satisfactorily explain loss of assets under section 727(a)(5); and failure to keep adequate records under section 727(a)(3). Alternatively, Plaintiff requests that her claim be declared nondischargeable as a debt obtained by fraud or misrepresentation under section

523(a)(2)(A); breach of fiduciary duty under section 523(a)(4); or willful and malicious injury to Plaintiff or her property under section 523(a)(6).

The Court finds that the objection to discharge should be denied, but that Plaintiff's debt should be declared nondischargeable. This Opinion represents the Court's Findings of Fact and Conclusions of Law pursuant to FED. R. BANKR. P. 7052.

## FACTUAL SUMMARY

Plaintiff contracted with Defendant to build a custom home on her lot near Boerne. Plaintiff's decision to hire Defendant as contractor for the project was based on representations made by Defendant that he had the experience and present ability to complete the project to Plaintiff's specifications and within her budget. The reality, however, was that Defendant was wholly unqualified to perform as promised. Defendant sought money up front to pay for estimates, asked for payments for work yet to be performed, and failed to pay multiple subcontractors despite advance payments made by Plaintiff. Because Defendant did not have the materials and equipment necessary to complete the job, he used Plaintiff's money to buy scaffolding, saws, and various other tools for the job. Defendant ordered the wrong size windows and had Plaintiff pay for a new shipment without returning the original order. Work was done in a substandard manner and much had to be repaired, replaced, or completely redone. The budget was consumed and exceeded while the home remained largely unfinished. Plaintiff terminated Defendant from the project and has since paid more than $200,000 to finish the home, which required repairing or redoing much of the work previously done by Defendant.

Prior to beginning the repair work and finishing construction of the house, Plaintiff's attorneys sent a letter to Defendant explaining that Plaintiff believed him to be in default under their

contract and requesting Defendant to produce all lien waivers and releases of liens from subcontractors that worked on the house; all bank and financial records from the construction account; and an accounting for all costs charged to Plaintiff. The letter also provided a time for Defendant to inspect the home prior to commencement of work to repair and finish the construction and repairs.

After receiving no satisfaction from her requests, Plaintiff initiated a lawsuit against Defendant in state court to recover damages for breach of the construction contract and violation of consumer protection statutes. The parties reached a settlement for a $15,000 cash payment to Plaintiff and a $200,000 agreed judgment against Defendant.

Defendant voluntarily filed for Chapter 7 relief on February 11, 2009. His Schedules and Statements, however, were incomplete and failed to list certain aliases, assumed names, and assets. The Petition was amended on April 15, 2009, along with the Schedules and Statement of Financial Affairs. Plaintiff then filed this adversary proceeding on May 18, 2009, to object to the Defendant's discharge and the dischargeability of her claim.

## FACTS

1. ***Defendant's failure to include certain aliases and assets in his initial filing was an honest mistake, rectified through amended schedules***.

Defendant's initial schedules failed to disclose certain assumed names and businesses which he owned or in which he had an interest, bank accounts in his name, accounts he had closed, and other assets he owned on the date of the petition. These omissions were brought to Defendant's attention at the first meeting of creditors and he dutifully amended the relevant schedules within the time requested by the trustee. A reset meeting of creditors was held after the amendments were filed.

Defendant's timely efforts to amend his schedules, coupled with a lack of evidence tending to show any malevolent intent, lead this Court to find that Defendant's initial omissions were made by honest mistake.

2. ***Defendant's records of financial dealings with Plaintiff were not shown to have been destroyed, falsified, or otherwise concealed***.

Plaintiff presented evidence that Defendant's record keeping was primitive and highly suspect. He provided little written documentation of expenses and costs on the construction project, and only when pushed to do so by Plaintiff. Further, the records provided by Defendant were often in the form of faded receipts or hand written tables of expenses. Plaintiff did not show, however, that any records maintained or received by Defendant were actively destroyed, falsified, or concealed in preparation for bankruptcy.

3. ***Defendant's assets were not adequate to meet his obligations***.

Plaintiff presented several years of Defendant's tax returns, showing a maximum annual income for Defendant and his spouse of about $80,000 and a low of about $29,000. Plaintiff's claim against Defendant is for $200,000 plus interest. There was no evidence at trial of any other substantial assets that would satisfy this claim.

4. ***Defendant misrepresented his past experience as a home builder to Plaintiff***.

Defendant's work career was spent largely as a sales person in a variety of fields, including sales jobs within the home building industry. He did not, however, acquire substantial experience as an actual home builder or contractor prior to entering into his agreement with Plaintiff. In his dealings with Plaintiff, Defendant claimed to have built several homes, claimed he was a partner in

a home building company, and claimed he had a number of subcontractors with whom he had regularly worked in the past. All of these representations were inaccurate.

Plaintiff contacted Tomorrow's Homes Today when seeking a builder for her house. Defendant was an employee at the company, but he held himself out to Plaintiff as a partner. Estimates provided by Tomorrow's Homes Today to Plaintiff came in substantially above her budget and she was forced to look elsewhere for a builder. Defendant subsequently left his job at Tomorrow's Homes Today, but persisted in his attempts to secure Plaintiff's business, showing her houses in the area that he claimed to have built and spoke of a long history of experience as a builder. The testimony at trial established that his experience was largely in sales rather than actual construction.

5. *Defendant misrepresented his current ability to build Plaintiff's home*.

After Plaintiff secured a bid to build her house within her budget from another builder, Defendant came back to her and represented that he could build the house to Plaintiff's specifications within her budget. The weight of the evidence produced at trial showed conclusively that Defendant lacked the experience and ability to support such representations, and the resultant failure to complete the project in a workmanlike manner demonstrated the lack of experience and ability.

6. *Defendant failed to carry out the job in a workmanlike manner*.

Substantial evidence showing Defendant's failure to carry out the job in a workmanlike manner was introduced at trial. Many of the doors in the house did not fit properly and were not level. Defendant ordered the wrong windows and failed to return them or credit the purchase to Plaintiff. There were a number of unexplained holes in the roof. A structural beam used to support the outdoor rear patio was not appropriate for outdoor use. The patio had to be demolished and

rebuilt. The metal roof leaked due to improper installation and will likely require installation of a new roof. The stucco job that Defendant supervised had to be redone because the quality was extremely poor. A number of pipes were located in the wrong place in the house, including bathroom pipes running through Plaintiff's bedroom closet. Singly, the problems were not insurmountable, but in the aggregate, they were overwhelming. Defendant's attempts to explain away these problems as simple tasks that would have been finished had he been given more time were unpersuasive.

7. *Plaintiff relied on Defendant's misrepresentations in her decision to hire Debtor*.

Plaintiff spent more than a year researching and preparing for the construction of her custom home. She was very specific about the aesthetics and materials she wanted to use and sought multiple bids from different contractors for the job. In making her ultimate decision to hire Defendant for the job, Plaintiff relied on his representations of his prior experience and present abilities in home construction.

## LEGAL CONCLUSIONS

Plaintiff requested denial of discharge pursuant to section 727(a), or alternatively, that Plaintiff's claim be found nondischargeable pursuant to section 523(a). Each claim for relief is discussed below.

1. *Defendant's discharge will be granted*.

Under Chapter 7 of the Bankruptcy Code, the court "shall grant the debtor a discharge unless" certain exceptions are shown. 11 U.S.C. § 727(a). Plaintiff claims that Defendant should be denied a discharge under the exceptions of false oath, failure to explain a loss or inadequacy of

assets, and failure to keep or preserve adequate records. 11 U.S.C. § 727(a)(3), (4)(A) & (5). Plaintiff has failed to sustain her burden as to each of these claims.

      a.     ***Defendant did not knowingly and fraudulently make a false oath***.

Plaintiff first asserts that Defendant, by filing incomplete schedules and statements, knowingly made a false oath in connection with the case, which would result in a denial of discharge under section 727(a)(4)(A).

In an objection to discharge proceeding under section 727(a)(4)(A), the plaintiff has the burden to prove, by a preponderance of the evidence, that the defendant 1) made a false statement, 2) under oath, 3) that defendant knew was false, 4) the statement was made with fraudulent intent, and 5) the statement was materially related to the bankruptcy. ***Beaubouef v. Beaubouef***, 966 F.2d 174, 178 (5th Cir. 1992). In ***Beaubouef***, the defendant failed to disclose his interest in a company in his bankruptcy schedules, despite the fact that he had disclosed the same ownership interest in a life insurance application one week prior to the bankruptcy filing. Further, the defendant failed to amend his schedules to reflect his ownership interest in another company for more than six months after the initial 341 meeting. The Fifth Circuit upheld the bankruptcy court's denial of discharge, holding that defendant's conduct amounted to a false oath under section 727(a)(4)(A). The court held that the defendant's failure to take advantage of the opportunity to clear up all omissions when he filed his amended schedules, combined with the multiple falsehoods constituted "reckless indifference to the truth and, therefore, the requisite intent to deceive." ***Id.*** The court further rejected defendant's contentions that the non-disclosures were immaterial, reasoning that a false oath is material "if it bears a relationship to the bankrupt's business transactions or estate." ***Id.***

While the omissions in the present case, like those in *Beaubouef*, are material to the case, the circumstances did not constitute a reckless indifference to the truth. Unlike the defendant in *Beaubouef*, Defendant here promptly cured the inaccuracies and omissions through proper amendments and then participated in a reset meeting of creditors. In light of Defendant's timely compliance with the trustee's request for amendments, the Court concludes that Defendant lacked the intent to deceive and did not make a false oath in connection with the case. As the Fifth Circuit noted in *Beaubouef*, "a discharge cannot be denied when items are omitted from the schedules by honest mistake." *Beaubouef*, 966 F.2d at 178. The Court finds that Defendant's omissions were the result of honest mistake, and therefore, Plaintiff's request that Defendant be denied discharge under section 727(a)(4)(A) is denied.

2.   ***Defendant could not explain the loss of assets he did not have***.

Plaintiff next claims Defendant should be denied a discharge for his failure to explain any loss or deficiency of assets to pay his debts pursuant to section 727(a)(5). Two courts of appeals decisions are instructive.

In *McBee v. Sliman*, 512 F.2d 504 (5th Cir. 1975), the Fifth Circuit denied debtors' discharge for their failure to adequately explain the loss of $14,000 cash. *McBee*, 512 F.2d at 506. The debtors in *McBee* were a married couple, and the $14,000 was the separate property of the wife. Debtors testified that the husband, unbeknownst to the wife, took the cash on a trip to Las Vegas in hopes of winning enough money to pay off their debts. He allegedly lost the entire sum in less than 24 hours. The court, however, found this testimony unpersuasive and held that the couple's inability to satisfactorily explain the loss of the $14,000 violated section 727(a)(5). *Id.* The court reasoned that once the creditors brought the existence and unexplained absence of the cash assets to light, the

8

debtors bore the burden of explaining what had happened. The court rejected the debtors' unsubstantiated testimony.

Similarly, in ***Dolin v. Northern Petrochemical Co.***, 799 F.2d 251 (6th Cir. 1986), the Sixth Circuit denied a discharge to a debtor who failed to adequately explain the loss of nearly $600,000 in cash withdrawals over a three year period. ***Dolin***, 799 F.2d at 252. The money was taken from companies in which the debtor was the sole shareholder and was in addition to his annual income of $80,000. The debtor in ***Dolin*** testified that he frittered away all of the money on cocaine and gambling expeditions, but he had no documentation or other substantiating evidence. ***Id.*** Again, the court found the debtor's testimony unpersuasive and denied his discharge.

The above cases can be read to require a specific asset or assets to be identified by a creditor before the debtor has the burden of explaining its loss. That was not done here. To the contrary, Plaintiff noted at trial Defendant's limited earnings reported on his recent tax returns and how the contract to build her home would represent a financial boon to Defendant. Because Defendant was not shown to have assets to satisfy a judgment, he cannot be required to explain their disappearance. Plaintiff's request for denial of Defendant's discharge under section 727(a)(5) is therefore denied.

3.   ***Defendant did not destroy, falsify or conceal records in connection with the case***.

Plaintiff next asks the Court to deny Defendant's discharge for failure to keep or maintain records pursuant to section 727(a)(3). Section 727(a)(3) states that a debtor should be denied a discharge where he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained." 11 U.S.C. § 727(a)(3). In deciding this issue, "[b]road discretion is vested in the

9

referee to grant or deny a bankruptcy petition based on a determination that books or records are adequate under the terms of the statute and the facts of each case." *McBee*, 512 F.2d at 506.

The primary allegation relied on by Plaintiff is that Defendant failed to keep proper records in building her house. While that is probative of Defendant's competency to do the job he represented he could do, it is not a failure to generally keep records from which his financial condition or business transactions could be ascertained. There is no allegation that Defendant failed to provide all of the relevant records he had in his possession or that records were destroyed or secreted. Therefore, Plaintiff's request that Defendant be denied discharge under 727(a)(3) is also denied.

4. ***Plaintiff's debt is nondischargeable because it was obtained by false representation***.

Plaintiff claims three grounds upon which her claim is nondischargeable under section 523 of the bankruptcy code: 1) it was obtained by false pretenses, false representation, or actual fraud under section 523(a)(2)(A); 2) it was obtained through fraud while acting in a fiduciary capacity under section 523(a)(4); and 3) it resulted from willful and malicious injury to Plaintiff or her property under section 523(a)(6). For the reasons set forth below, this Court concludes that Plaintiff's claim is nondischargeable because it was obtained by false representation pursuant to section 523(a)(2)(A).

  a. ***Burden and elements of section 523(a)(2)(A)***.

Defendant's counsel urged at trial that Plaintiff had the burden of proof on the issue of nondischargeability and had to carry that burden by clear and convincing evidence. While this once was the law in the Fifth Circuit (*see **Allstate Ins. Co. v. Foreman (In re Foreman)***, 906 F.2d 123, 127 (5th Cir. 1991) ("we endorse the application of the 'clear and convincing' standard in the section

523(a)(2) dischargeability context")), the Supreme Court held that the appropriate burden of proof is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991) ("we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard") (change in law recognized in *Luce v. First Equipment Leasing Corp.* (*In re Luce*), 960 F.2d 1277, 1281 (5th Cir. 1992)). The appropriate standard here is preponderance of the evidence.

The Fifth Circuit distinguishes claims for nondischargeability under section 523(a)(2)(A) between claims of false representation and claims of actual fraud. *See Recoveredge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995). Looking to false representation, the Fifth Circuit has stated that the plaintiff must prove the following three elements: (1) the representations must have been knowing and fraudulent falsehoods (2) describing past or present facts (3) that were relied upon by the plaintiff. *Allison v. Roberts* (*In re Allison*), 960 F.2d 481, 483 (5th Cir. 1992). Each of these is discussed in turn below.

   b.  *Defendant's representations were knowing and false representations*.

As to the first prong, the Fifth Circuit in *Allison* noted that the frauds contemplated by section 523(a)(2)(A) are those "involving 'moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient.'" *Allison* 960 F.2d at 483 (citing COLLIER ON BANKRUPTCY ¶ 523.08 [4] (15th ed. 1989)).

Applying this to the facts at hand, the Court finds that Defendant made false representations about his experience and abilities. Defendant is a salesman by trade and can be forgiven for the puffery inherent in any sales transaction. The evidence at trial, however, showed representations that went well beyond mere puffery and into falsehood. Defendant represented that he was equipped with

11

the ability, contacts, and experience to build a moderately expensive custom home for Plaintiff. He showed Plaintiff previous homes he purportedly had built, even though he was not the actual builder of those homes. He led Plaintiff to believe he was a partner in a building company, when he was only an employee. Defendant's false representations were exposed after an investment of more than $350,000 turned into an unfinished and uninhabitable home construction site. Defendant made false representations in the hopes of securing a contract. This was not merely a sales job, but rather a deception which harmed the Plaintiff.

    c.    ***Representations were made as to past or present facts***.

A fraudulent misrepresentation under 523(a)(2)(A) must be made as to past or present facts, but cannot be found solely on the basis of a promise made and subsequently breached. *Allison*, 960 F.2d at 484. The misrepresentations at issue in this case dealt primarily with Defendant's portrayal of his prior experiences as a home builder and current ability to act in such capacity. They were, therefore, misrepresentations as to past or current facts.

    d.    ***Plaintiff justifiably relied on the misrepresentations of Defendant***.

The final element is the reliance of Plaintiff on the misrepresentations of Defendant. As the Fifth Circuit noted in *Allison*, the nature of reliance required by section 523(a)(2)(A) was the subject of considerable debate. *Allison*, 960 F.2d at 484. In *Allison*, the Fifth Circuit settled on a standard of less than reasonable reliance, while still requiring a showing of some reasonableness. The issue remained unresolved until the Supreme Court ruled on the issue.

The Supreme Court held that section 523(a)(2)(A) requires justifiable, but not reasonable, reliance of the aggrieved party on any alleged misrepresentation. *Field v. Mans*, 516 U.S. 59, 74-75 (1995). Clarifying the justifiable reliance standard, the court explained that a person is justified in

12

relying on a misrepresentation unless he is "capable of appreciating its falsity at the time by the use of his senses." *Id*. at 71. Thus, a recipient of a misrepresentation is justified in relying on the falsehood even though he might have ascertained the truth through a further investigation. *Id.* at 70. The capacity and knowledge of the plaintiff is to be considered in determining whether the reliance was justified. *Id.* at 73.

Applying this standard, it is clear that Plaintiff was justified in relying on the representations of Defendant. Defendant showed several of his alleged prior home-building projects to Plaintiff, where in actuality he was merely employed by the contractor. Further, Defendant represented that he had the present ability and skill to build her home to her specifications and within her budget. Had Plaintiff investigated these claims further by, for example, asking the homeowners about Defendant's work on their site, she may have uncovered the truth. But the Supreme Court held in *Field* that Defendant need only rely on her sensory impression at the moment the representation is made to be justified in relying on it. Defendant's background as a salesman provided him with an enhanced ability to make an impression on the senses of the ordinary person. Further, while an experienced home builder, or a person who has contracted for similar projects in the past, may have been able to see past Defendant's representations, the ability and sophistication of Plaintiff in construction must be taken into consideration. This was the first time Plaintiff had contracted to build a new home, and she was a novice. While prior remodeling or construction experience might have alerted Plaintiff to a problem, no evidence was adduced on this issue. The Court therefore concludes that Plaintiff was justified in her reliance on the misrepresentations of Defendant as to his past experience and present ability in home construction.

    e.    ***Plaintiff's claim is nondischargeable***.

13

Having satisfied all three elements of section 523(a)(2)(A), this Court holds that Plaintiff's claim against Defendant was procured by misrepresentation and false pretenses and is therefore nondischargeable. Because this conclusion makes the debt nondischargeable, it is not necessary to reach the other grounds of nondischargeability.

  f.  ***Plaintiff is entitled to reasonable attorney's fees***.

As part of her request for relief, Plaintiff requested attorney's fees for the work done in prosecuting this adversary proceeding. While section 523(a)(2)(A) does not expressly provide for attorney's fees, the Fifth Circuit has held that a successful creditor can recover such if there is a right to them in an enforceable contract between the parties. ***Luce v. First Equipment Leasing Corp.***, 960 F.2d at 1286. Article 15 of the construction contract between the parties in this case provided "[i]n the event of any arbitration or litigation relating to the project, project performance or this contract, the prevailing party shall be entitled to reasonable attorney fees, costs and expenses." Plaintiff's counsel may file an application for attorney's fees and expenses within fourteen days of the entry of Judgment.

### CONCLUSION

For the above-stated reasons, Defendant's discharge will be granted, but Plaintiff's judgment claim and attorney's fees are nondischargeable. A separate judgment will be rendered.